IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **ROBERT MENDEZ** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No.  7:23-CV-00013-O |
| | § | |
| **MARCIA J. ODAL** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Before the Court are Defendant's Motion for Summary Judgment and Appendix in Support (ECF Nos. 46, 47); Plaintiff's Response and Appendix in Support (ECF Nos. 52, 53); and Defendant's Reply and Appendix in Support (ECF No. 56, 57); Plaintiff's Motions to Strike Dr. Benjamin Leeah and his report and Appendices in Support (ECF Nos. 39, 40, 43, 44); Defendant's Responses and Appendix in Support (ECF Nos. 41, 42, 48); and Plaintiff's Replies (ECF Nos. 45, 50); Defendant's Motion to Withdraw Defendant's Deemed Admissions (ECF No. 58); and Plaintiff's Response (ECF No. 60). Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 46) and **DENIES as moot** the other motions (ECF Nos. 39, 43, and 58).

### I.    BACKGROUND

The facts, unless otherwise noted, are undisputed. At all times relevant to this litigation, Plaintiff Robert Mendez ("Plaintiff") was an inmate in the custody of Texas Department of Criminal Justice ("TDCJ") and Defendant Dr. Marcia Odal was employed by the Texas Tech University Health Sciences Center ("TTUHSC"). TTUHSC is an agency of the State of Texas. On May 3, 2022, Plaintiff reported to the unit clinic for a previously scheduled appointment to get a

new prescription for body lotion and to address possible cellulitis (a skin infection) on his face. Prior to being seen by Defendant, Plaintiff had submitted a request for treatment where he indicated that he had "a bump on [his] face" and wanted "to make sure it a staff"—that is, he wanted to make sure his rash was not staph.[1] It is disputed whether Defendant ever saw the request.

At the May 3 appointment, Defendant noted that Plaintiff was "convinced he was exposed to a rash from his cell mate."[2] Ultimately, Defendant diagnosed Plaintiff with a scalp rash, parotitis, and cellulitis. Defendant did not note any visible abscesses, drainage, or puss. Parotitis is an irritation of the parotid gland, which is located on the side of the face. Cellulitis is a common, potentially serious bacterial skin infection. Cellulitis is commonly caused by streptococcus and staphylococcus bacteria, including methicillin-resistant Staphylococcus aureus ("MRSA"), also referred to as "staph". MRSA can cause a host of serious medical risks if not properly treated.

Defendant prescribed Plaintiff cream for potential scabies on his scalp and clindamycin and ibuprofen for the cellulitis and parotitis. She also scheduled a follow up in seven days and instructed Plaintiff to return immediately if he noticed any new or worsening symptoms. For reasons that are unclear from the record, the follow-up appointment did not occur until May 12, when Plaintiff submitted a "sick call" request. During that visit, Defendant observed that Plaintiff's parotitis had improved but that his cellulitis infection had worsened. In particular, he had developed an abscess, puss, and drainage at the nape of his neck, as well as "draining swelling at upper right chest."[3] The presence of the abscess allowed Defendant to order a lab test of the infection (a culture and sensitivity test) to determine its cause. She prescribed a new antibiotic, Bactrim, and daily wound care. Four days later, the results of that culture confirmed that the

---

[1] Pl.'s App'x Supp. Resp. (Treatment Request) App. 0135, ECF No. 53.
[2] Def.'s App'x Supp. Mot. Summ. J. (Appointment Notes) App. 46, ECF No. 47; Pl.'s App'x Supp. Resp. (Appointment Notes) App. 0007, ECF No. 53.
[3] Pl.'s App'x Supp. Resp. (Second Appointment Notes) App. 0394, ECF No. 53.

cellulitis was caused by MRSA, and that the infection was resistant to the clindamycin that Plaintiff had initially been prescribed.

However, before the lab work came back, on May 14, Plaintiff sought treatment from two night-nurses, who contacted the on-call physician who, in turn, determined that Plaintiff's infection required an immediate transfer to the emergency room at United Regional Health Care in Wichita Falls ("Union"). At Union, Plaintiff was initially treated with intravenous antibiotics but the treating physician, Dr. Jerald E. Giles, determined that "surgery was inevitable." Plaintiff underwent several surgeries to remove the infection. The surgeries resulted in a "large 20-centimeterwide by 4–7-centimeter tall-defect" in the back of Plaintiff's neck.

Plaintiff underwent the relevant administrative grievance procedures in late 2022. After exhausting his administrative remedies, Plaintiff filed this action. He sues under 42 U.S.C. § 1983, alleging that Defendant was deliberately indifferent to his serious medical need in violation of his Eighth Amendment rights. Defendant now moves for summary judgment. Being fully briefed, the Defendant's Motion is now ripe for this Court's review.

## II.     LEGAL STANDARD

### A.  Motion for Summary Judgment Standard

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial." *2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *6 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). Summary judgment is mandatory if the parties fail to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**B. Qualified Immunity**

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). To overcome an official's qualified immunity defense, a plaintiff must establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The salient question is whether the state of the law gives the official "fair warning" that his or her conduct is unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### III.    ANALYSIS

Plaintiff's claims center on whether Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendant, as a government official, has raised the defense of qualified immunity. The parties' briefing focuses on whether Defendant acted with deliberate indifference. Accordingly, the Court's analysis focuses on deliberate indifference.

"Prison officials violate the Eighth Amendment's prohibition of cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs if such indifference inflicts unnecessary suffering." *Thibodeaux v. Thomas*, 548 Fed. App'x 174, 175 (5th Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976)). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"[A]n incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim

is a prisoner."). Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a provider's decision not "to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert*, 463 F.3d at 350 n.32.

Plaintiff argues that a reasonable jury could conclude that Defendant knew that Plaintiff was at risk of serious harm because she (1) diagnosed Mr. Mendez with cellulitis; (2) knew that cellulitis could be caused by MRSA; (3) knew the risks associated with cellulitis and MRSA; and (4) knew that TDCJ policy required physicians to treat all cases of cellulitis as if they were caused by MRSA. The Court disagrees. None of this evidence establishes that Defendant actually "dr[ew] the inference" that Plaintiff's cellulitis was caused by MRSA as necessary to sustain a deliberate indifference claim. *Farmer*, 511 U.S. at 837. Instead, the summary judgment evidence shows at most that Defendant *should* have known that the cellulitis diagnosed at the first visit was caused by MRSA and therefore presented a serious risk. The "failure to alleviate a significant risk that [the official] should have perceived but did not" is insufficient to show deliberate indifference. *Id.* at 838.

Here, Plaintiff's claims concern medical judgments made by Defendant. The evidence shows that Plaintiff initially presented with a rash that was unaccompanied by visible drainage that could be swabbed and lab tested, from this milder rash Defendant diagnosed Plaintiff with parotitis and cellulitis,[4] Defendant treated Plaintiff "for parotitis and cellulitis,"[5] and when Plaintiff presented with more severe, lab-testable symptoms, Defendant tested Plaintiff for MRSA.[6] The fact that Defendant's initial, incorrect diagnosis and treatment ultimately led to Plaintiff's injury

---

[4] Def.'s App'x Supp. Mot. Summ. J. 47, ECF No. 47; Pl.'s App'x Supp. Resp. App. 0007–08, ECF No. 53.
[5] Pl.'s App'x Supp. Resp. (RFA Responses) App. 0394, (Appointment Notes) 0008, ECF No. 53.
[6] Pl.'s App'x Supp. Resp. (Second Appointment Notes) App. 0394, ECF No. 53.

does not create a genuine dispute of material fact as to whether Defendant knew Plaintiff had MRSA and ignored it.

Defendant's actions are "classic example[s] of a matter for medical judgment" and, therefore, cannot form the basis of a deliberate indifference claim. *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015) (quoting *Estelle*, 429 U.S. at 107); *see Johnson v. Gregg Cnty. Jail*, Civil Action No. 6:20-cv-00377-JCB, 2021 WL 789886, at *2 (E.D. Tex. Jan. 8, 2021) (concluding plaintiff failed to state a claim when he challenged follow up care provided and alleged doctor was deliberately indifferent "by failing to send him to physical therapy"), *report and recommendation adopted*, 2021 WL 785089 (E.D. Tex. Mar. 1, 2021); *Smith v. Larpenter*, Civil Action No. 16-15778, 2017 WL 2773662, at *7 (E.D. La. May 3, 2017) (citing *Brauner*, 793 F.3d at 498–99) ("[T]he decision of which specific medication to prescribe Plaintiff is a classic example of a matter of medical judgment which is not actionable under § 1983."), *report and recommendation adopted*, 2017 WL 2780748 (E.D. La. June 26, 2017); *Auguillard v. Toce*, Civil Action No. 14-394-JJB-RLB, 2015 WL 5093842, at *5 (M.D. La. Aug. 27, 2015) (collecting cases) (reasoning that "a decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference").

Plaintiff asserts that he can prove deliberate indifference by showing that Defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[7] But the undisputed evidence shows the contrary happened here. Plaintiff was seen by Defendant

---

[7] Pl.'s Resp. Def.'s Mot. Summ J. 22, ECF No. 52 (quoting *Easter*, 467 F.3d at 464).

upon his request,[8] all of his symptoms were assessed,[9] his treatment plan was updated when new symptoms were presented,[10] and Defendant directed that Plaintiff should "[r]eturn to clinic [*sic*] at once" for certain symptom changes or "if worse[.]"[11] At most, the evidence shows Defendant *could* have *unofficially* diagnosed Plaintiff with MRSA during the initial visit—it does not show that Defendant knew that Plaintiff's cellulitis was caused by MRSA.[12] Both Defendant's initial non-MRSA diagnosis and the fact that Defendant did not test for MRSA until Plaintiff presented with abscesses that were able to swabbed—that is, when lab testing had become possible—are matters of professional medical judgment that the Court may not second guess. *See Auguillard*, 2015 WL 5093842, at *5.

Plaintiff's reliance on *Ford* to support his assertion that he received only a "cursory level of care" and that Defendant "deliberate[ly] refus[ed] to treat his cellulitis" is inapposite.[13] In *Ford*, it was undisputed that the physician subjectively knew that the plaintiff had Addison's disease and the dispositive fact was that the physician did not treat it at all. *Ford*, 102 F.4th at 308 ("Plaintiffs have presented evidence that Dr. Corley did not monitor or treat Newsome's Addison's disease *whatsoever*." (emphasis in original)). As explained above, Plaintiff has not presented sufficient evidence to show that Defendant actually knew that Plaintiff had MRSA—only that Defendant knew Plaintiff had parotitis and cellulitis. And significantly, the doctor in *Ford* did not treat or monitor one of the patient's ailments at all. But here, the evidence shows that Defendant *treated* Plaintiff for parotitis and cellulitis.[14] Setting aside Defendant's disputed testimony

---

[8] *Id.* at 4, 9; Pl.'s App'x Supp. Resp. (Second Appointment Notes) App. 0394, ECF No. 53.

[9] Pl.'s App'x Supp. Resp. (Both Appointment Notes) App. 0007–08, 0394, ECF No. 53.

[10] *Id.* at App. 0394.

[11] *Id.* at App. 0008.

[12] *Cf.* Resp. Def.'s Mot. Summ J. 22, ECF No. 52 ("Whether a lab test is required to *officially* diagnose an infection as MRSA is beside the point." (emphasis in original).

[13] Pl.'s Resp. Def.'s Mot. Summ J. 24-25, ECF No. 52.

[14] Pl.'s App'x Supp. Resp. (RFA Responses) App. 0394, (Appointment Notes) 0008, ECF No. 53.

regarding whether she prescribed clindamycin to treat both parotitis and cellulitis, the medical records clearly show that Defendant was at least monitoring the cellulitis and had prescribed a cream to treat potential scabies.[15] *Cf. Ford*, 102 F.4th at 308. At most, her course of action was a mistreatment or negligent treatment decision that the *Ford* court explicitly notes does "not constitute deliberate indifference." *Id.*

And even granting Plaintiff's argument that Defendant's prescribing clindamycin ran afoul of the medical policy's directives, neglecting to follow policy does not turn medical misjudgment into a constitutional violation. *See Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation."). Though Defendant's misalignment with the policy may rise to the level of medical negligence, negligence alone is not a violation of the Eight Amendment. *See Fife v. NFN Hensley, Health & Med. Adm'r*, No. 08-10062, 2009 WL 348823, at *1 (5th Cir. Feb. 12, 2009) (per curiam) ("[U]nsuccessful medical treatment, negligence, or medical malpractice are insufficient to give rise to a claim of deliberate indifference.").

As disquieting as the consequences of Defendant's failure to initially diagnose Plaintiff with MRSA are, Plaintiff has not shown that Defendant acted with deliberate indifference. Accordingly, Plaintiff has failed to overcome Defendant's qualified immunity defense and summary judgment must be granted in favor of Defendant.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 46) is **GRANTED**. Plaintiff's Motions to Strike (ECF Nos. 39, 43) are **DENIED as moot** because the Court did not rely on the challenged expert or his findings in reaching its decision. Further, because

---

[15] Def.'s App'x Supp. Reply (Defendant's Medical Notes) 87, ECF 59 ("follow-up 7 days: Recheck cellulitis and left facial swelling").

the Court's reasoning regarding Defendant's Motion for Summary Judgment would remain unchanged regardless of whether Defendant's Responses to Plaintiff's Request for Admission were deemed admitted, Defendant's Motion to Withdraw Her Deemed Admissions (ECF No. 58) is **DENIED as moot**.

      **SO ORDERED** on this **20th Day** of **April, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**